## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF VIRGINIA
## BIG STONE GAP DIVISION

| | | |
|---|---|---|
| **JOSEPH L. SHULAR,** | ) | |
| Plaintiff | ) | Civil Action No. 2:20cv00042 |
| | ) | |
| v. | ) | **REPORT AND** |
| | ) | **RECOMMENDATION** |
| **KILOLO KIJAKAZI,**[1] | ) | |
| **Acting Commissioner of Social** | ) | By: PAMELA MEADE SARGENT |
| **Security,** | ) | United States Magistrate Judge |
| Defendant | ) | |

*I. Background and Standard of Review*

Plaintiff, Joseph L. Shular, ("Shular"), filed this action challenging the final decision of the Commissioner of Social Security, ("Commissioner"), denying his claims for disability insurance benefits, ("DIB"), and supplemental security income, ("SSI"), under the Social Security Act, as amended, ("Act"), 42 U.S.C. §§ 423 and 1381 *et seq.* Jurisdiction of this court is pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3). This case is before the undersigned magistrate judge by referral pursuant to 28 U.S.C. § 636(b)(1)(B). As directed by the order of referral, the undersigned now submits the following report and recommended disposition. Neither party has requested oral argument; therefore, this case is ripe for decision.

The court's review in this case is limited to determining if the factual findings of the Commissioner are supported by substantial evidence and were reached through application of the correct legal standards. *See Coffman v. Bowen,*

---

[1] Kilolo Kijakazi became the Acting Commissioner of Social Security on July 9, 2021. Pursuant to Federal Rules of Civil Procedure Rule 25(d), Kilolo Kijakazi is substituted for Andrew Saul as the defendant in this suit.

829 F.2d 514, 517 (4th Cir. 1987). Substantial evidence has been defined as "evidence which a reasoning mind would accept as sufficient to support a particular conclusion.  It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." *Laws v. Celebrezze,* 368 F.2d 640, 642 (4th Cir. 1966). "'If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is "substantial evidence."'" *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990) (quoting *Laws*, 368 F.2d at 642).

The record shows Shular protectively filed applications for DIB[2] and SSI on October 17, 2018, alleging disability as of October 21, 2017, due to back pain related to a herniated disc and arthritis; depression; anxiety; pain and weakness in his left leg; and mild chronic obstructive pulmonary disease, ("COPD"). (Record,

---

[2] Shular previously filed an application for DIB on November 30, 2014, alleging disability as of October 31, 2014. (R. at 64.) By decision dated October 20, 2017, the ALJ denied his claim. (R. at 64-75.) After the ALJ issued his decision, Shular pursued his administrative appeals and filed an action in this court seeking review of the ALJ's unfavorable decision. *See Shular v. Berryhill*, Case No. 2:18cv00044. By order dated March 20, 2020, this court affirmed the Commissioner's decision denying benefits.

In accordance with Social Security Acquiescence Ruling, ("AR"), 00-1(4), "[w]hen adjudicating a subsequent disability claim arising under the same…title of the Act as the prior claim, an adjudicator determining whether a claimant is disabled during a previously unadjudicated period must consider such a prior finding as evidence" and consider its persuasiveness in light of all relevant facts and circumstances. A.R. 00-1(4), 65 Fed. Reg. 1936-01, at *1938, 2000 WL 17162 (Jan. 12, 2000). It is noted that, when *Albright* was decided, the agency "weighed" opinion evidence under different standards. *See Albright v. Comm'r of Soc. Sec. Admin.,* 174 F.3d 473 (4th Cir. 1999). Those standards have been superseded by 20 C.F.R. § 404.1520c, which prescribes how to consider persuasiveness of opinion evidence and prior administrative findings in claims made on or after March 27, 2017. Because this claim was made after March 27, 2017, the ALJ is required to consider prior ALJ decisions and Appeals Council findings under *Albright. See* Program Operations Manual System, ("POMS"), DI 24503.005, available at http://policy.ssa.gov/poms.nsf/lnx/0424503005 (effective Apr. 13, 2021) (explaining the categories of evidence).

The ALJ in this case noted he reviewed the previous October 2017 decision and found it to be "persuasive." (R. at 21.) The ALJ noted the overall evidence of record did not establish any significant change or worsening of Shular's condition. (R. at 21.)

("R."), at 12, 239-46, 274, 305.) The claims were denied initially and on reconsideration. (R. at 162-64, 169-71, 175-90.) Shular requested a hearing before an administrative law judge, ("ALJ"). (R. at 191-92.) A hearing was held on July 10, 2020, at which Shular was represented by counsel. (R. at 34-60.)

By decision dated August 5, 2020, the ALJ denied Shular's claims. (R. at 12-26.) The ALJ found Shular met the nondisability insured status requirements of the Act for DIB purposes through December 31, 2019. (R. at 14.) The ALJ found Shular had not engaged in substantial gainful activity since October 21, 2017, the alleged onset date. (R. at 14.) The ALJ determined Shular had severe impairments, namely degenerative disc disease; COPD; obesity; depression; and anxiety, but he found Shular did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. at 15.)

The ALJ found Shular had the residual functional capacity to perform light[3] work, except he would require two hours of sitting throughout the day; he could occasionally climb, balance, stoop, kneel, crouch and crawl; he could have only occasional exposure to pulmonary irritants and no more than moderate exposure to noise; he was limited to tasks that could be learned in 30 days or less; and he could have no more than occasional interaction with the public. (R. at 17-18.) The ALJ found Shular was unable to perform any of his past relevant work. (R. at 25.) Based on Shular's age, education, work history and residual functional capacity and the testimony of a vocational expert, the ALJ found a significant number of

---

[3] Light work involves lifting items weighing up to 20 pounds at a time with frequent lifting or carrying of items weighing up to 10 pounds. If someone can perform light work, he also can perform sedentary work. *See* 20 C.F.R. §§ 404.1567(b), 416.967(b) (2020).

jobs existed in the national economy that Shular could perform, including the jobs of a retail marker, an addressing clerk and an assembler. (R. at 25-26.) Thus, the ALJ concluded Shular was not under a disability as defined by the Act, and he was not eligible for SSI and DIB benefits. (R. at 26.) *See* 20 C.F.R. §§ 404.1520(g), 416.920(g) (2020).

After the ALJ issued his decision, Shular pursued his administrative appeals, (R. at 234-35), but the Appeals Council denied his request for review. (R. at 1-5.) Shular then filed this action seeking review of the ALJ's unfavorable decision, which now stands as the Commissioner's final decision. *See* 20 C.F.R. §§ 404.981, 416.1481 (2020). This case is before this court on Shular's motion for summary judgment filed June 17, 2021, and the Commissioner's motion for summary judgment filed September 2, 2021.

## II.  Facts

Shular was born in 1972, (R. at 239), which classifies him as a "younger person" under 20 C.F.R. §§ 404.1563(c), 416.963(c). He has a high school education and past work experience as a machinery mechanic. (R. at 40, 57, 275.) Shular testified that he used two inhalers, one of which he used twice daily. (R. at 42-43.) Shular stated he had undergone two back surgeries since 2012, and he returned to light-duty work until October 2014. (R. at 43-44.) While working light-duty, Shular stated he was allowed to sit, walk or lie down as needed. (R. at 43.) He stated he was eventually laid off from work after his employer went out of business. (R. at 44.) Shular stated he used a cane due to leg pain and balance issues. (R. at 48.)

Rick Bradley, a vocational expert, was present and testified at Shular's hearing. (R. at 57-59.) Bradley was asked to consider a hypothetical individual of Shular's age, education and work history, who had the residual functional capacity to perform light and sedentary[4] work, except he would require two hours of sitting throughout the day; he could occasionally climb, balance, stoop, kneel, crouch and crawl; he could have only occasional exposure to pulmonary irritants and no more than moderate exposure to noise; he was limited to tasks that could be learned in 30 days or less; and he could have no more than occasional interaction with the public. (R. at 57.) He stated work existed in significant numbers that such an individual could perform, including jobs as a retail marker, an addressing clerk and an assembler. (R. at 57-58.) Bradley stated there would be no jobs available should the same hypothetical individual be unable to deal with work stresses; to behave in an emotionally stable manner; to relate predictably even to supervisors and co-workers; and who would miss more than two days of work a month. (R. at 58.) He also stated there would be no work available should the hypothetical individual be limited to only occasional use of his bilateral upper extremities. (R. at 58-59.)

In rendering his decision, the ALJ reviewed records from Howard S. Leizer, Ph.D., a state agency psychologist; Dr. Jack Hutcheson, M.D., a state agency physician; Leslie E. Montgomery, Ph.D., a state agency psychologist; Dr. Michael Koch, M.D., a state agency physician; Southern Medical Group, Inc.; Norton Community Hospital; Community Orthopedics; Family Preservation of Virginia,

---

[4] Sedentary work involves lifting items weighing up to 10 pounds with occasional lifting or carrying of articles like docket files, ledgers and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally, and other sedentary criteria are met. *See* 20 C.F.R. §§ 404.1567(a), 416.967(a) (2020).

("Family Preservation"); Leigh A. Ford, Ph.D., a licensed clinical psychologist; Drs. Botts & Botts Optometrists; Wellmont Medical Associates; and St. Charles Community Health Clinic.

The medical evidence shows Shular suffered a work-related low back injury in 2012, for which he underwent a left L5-S1 partial hemilaminotomy and diskectomy and foraminotomy, with partial laminotomy at the S1-S2 level. (R. at 341-42.) In 2013, Shular was neurologically stable and had reached maximum medical improvement. (R. at 356.) Shular suffers from mild hearing loss in his left ear and moderate hearing loss in his right ear. (R. at 1105.)

During the relevant time period,[5] Shular saw Kellie Brooks, F.N.P.-B.C., a board-certified family nurse practitioner with the St. Charles Community Health Clinic, for anxiety, insomnia, a ganglion cyst, low back and leg pain and shortness of breath. Shular's examinations showed his gait was normal; his left lower extremity showed no joint instability; he had appropriate judgment and good insight; and he had a euthymic mood and appropriate affect. (R. at 754, 763, 771, 778, 787, 794.) He reported he felt better, as his mood, sleep and back pain had improved with medication. (R. at 750, 775, 784, 791, 798, 1031, 1040, 1048, 1073, 1080, 1088, 1094, 1120, 1141, 1147.) Shular reported being more active, including playing with his dog, hunting, working outdoors and walking for exercise. (R. at 759, 768, 775, 784, 791, 798, 806, 1040, 1064.)

---

[5] The relevant time period is October 21, 2017, the day after the ALJ's initial decision denying benefits and Shular's alleged onset date, and August 5, 2020, the date of the ALJ's decision at issue in this case.

On January 19, 2019, Dr. Eddie Brown, D.O., a physician with Southern Medical Group, Inc., saw Shular at the request of Disability Determination Services. (R. at 744-48.) Shular was in no acute distress; he ambulated without assistance; he had an antalgic gait; his grip strength was 5/5 with adequate fine motor movements, dexterity and ability to grasp objects, bilaterally; his extremities had no edema, cyanosis or erythema; he was able to sit in no significant distress and walk and stand in the office; he was fully oriented and cooperative; he did not appear to be depressed or anxious; he was able to communicate with no deficits; his recent and remote memory were intact; he had good insight and cognitive function; he had good bilateral motor tone and strength in all muscle groups; his reflexes were normal; he had intact sensation; he had no muscle asymmetry, atrophy or involuntary movements; his straight leg raising tests were negative; and he had joint tenderness in the lumbar spine, but no signs of joint instability, inflammation or deformity. (R. at 745-46.) Dr. Brown diagnosed major depressive disorder and degenerative disc disease of the lumbar spine. (R. at 746.)

Dr. Brown opined Shuler would "unlikely" be able to walk and/or stand for a full workday; he "may be" able to sit for a partial workday with allotted occasional breaks; he would be limited to lifting and carrying items weighing less than 10 pounds because his condition "may be" exacerbated by lifting or carrying excessive weight; and he should refrain from excessive bending, stooping and crouching. (R. at 746-47.)

On January 22, 2019, Shular saw Brooks for a cyst on the top of his left hand. (R. at 806-17.) Shular's gait was normal; his left upper extremity was normal, except for a ganglion cyst; he had appropriate judgment and good insight;

his mood was euthymic; and his affect was appropriate. (R. at 809-10.) Shular was referred to an orthopedic surgeon for evaluation of the ganglion cyst. (R. at 816.)

On January 22, 2019, Howard S. Leizer, Ph.D., a state agency psychologist, completed a Psychiatric Review Technique form, ("PRTF"), finding Shular did not suffer from a severe mental impairment. (R. at 90-91.) He opined Shular had no limitations on his ability to understand, remember or apply information; to interact with others; to concentrate, persist or maintain pace; and to adapt or manage himself. (R. at 91.)

Also on January 22, 2019, Dr. Jack Hutcheson, M.D., a state agency physician, completed a medical assessment, finding Shular had the residual functional capacity to perform light work, except he could stand, walk and sit six hours each in an eight-hour workday; push/pull as much as the lift/carry restrictions; frequently balance; and occasionally climb, stoop, kneel, crouch and crawl. (R. at 93-94.) Dr. Hutcheson opined Shular had no manipulative, visual, communicative or environmental limitations. (R. at 94.) On July 15, 2019, Dr. Michael Koch, M.D., a state agency physician, completed a medical assessment which mirrored that of Dr. Hutcheson from January 22, 2019. (R. at 129-30.)

On February 4, 2019, Shular saw Dr. James W. Price, M.D., an orthopedic surgeon, for examination of his ganglion cyst. (R. at 865-67.) X-rays of Shular's left wrist showed peri-trapezium arthritic changes. (R. at 868.) On February 26, 2019, Shular underwent excision of a dorsal ganglion cyst. (R. at 823-24.) Subsequent office visits showed Shular was doing well; he denied pain and discomfort in the wrist and hand; he had intact sensation; and his motor function was grossly intact. (R. at 843, 853, 856.)

On February 28, 2019, Shular was evaluated by Revonda Watts, M.S., at Family Preservation, for depression and anxiety. (R. at 836-38.) Shular was friendly and cooperative; he made good eye contact; his speech was normal; his thought processes were logical, conversational, accelerated and pressured; he had full insight and good judgment; he had moderate functional impairment; he had good impulse control; he was fully oriented; he had adequate attention and concentration; he had no memory impairment; his mood was irritable, depressed and hopeful; his affect was flattened; his gait, posture and psychomotor activity were normal; he had no abnormal movements; and he ambulated upright and unimpaired. (R. at 836-37.) Watts diagnosed major depressive disorder, recurrent episode, severe. (R. at 836.) On March 18, 2019, Shular reported improvement since starting his medication. (R. at 839-41.) His examination remained unchanged, except his gait and posture were slow and rigid, and his muscle strength and tone were impaired due to leg and back issues. (R. at 840.)

On March 25, 2019, Shular saw Brooks and reported chronic low back pain and left leg pain. (R. at 843.) Shular's gait was normal; his lumbar spine had normal lumbar lordosis, no tenderness to palpation and normal range of motion; he had appropriate judgment and good insight; and he had a euthymic mood and appropriate affect.[6] (R. at 846.) X-rays of Shular's lumbar spine were ordered, as well as physical therapy.[7] (R. at 847.) On April 1, 2019, x-rays of Shular's lumbar spine showed stable, mild, multi-level degenerative changes, and no acute osseous abnormality was noted. (R. at 1007.)

---

[6] Shular's examination findings remained unchanged at his office visits in May and June 2019. (R. at 1034, 1043.)

[7] Shular participated in physical therapy from April 2, 2019, through May 6, 2019. (R. at 882-98, 962-1006.)

On April 25, 2019, Watts completed a mental assessment, finding Shular had a satisfactory ability to follow work rules; to deal with work stresses; to function independently; to maintain attention and concentration; to understand, remember and carry out simple job instructions; to maintain personal appearance; to behave in an emotionally stable manner; to relate predictably in social situations; and to demonstrate reliability.  (R. at 874-76.) She opined Shular had a seriously limited ability to relate to co-workers; to deal with the public; to use judgment in public; to interact with supervisors; and to understand, remember and carry out complex and detailed job instructions. (R. at 874-75.) Watts stated Shular would be absent from work about two days a month. (R. at 876.)

On May 31, 2019, Shular saw Leslie Amanda Davis, F.N.P., a family nurse practitioner with Family Preservation, and stated he did not "feel like getting out and doing things" despite reporting improvement with his symptoms of anxiety, depression and sleep.[8] (R. at 1019.) Shular was friendly and cooperative; he was neat and well-groomed; he made good eye contact; his speech was normal; his thought processes were conversational, relevant and normal; he had full insight and good judgment; he had mild functional impairment; his impulse control was good; he had adequate attention and concentration; he was fully oriented; he had no memory impairment; his mood was calm and hopeful; his affect was appropriate; his gait, posture and psychomotor activity were normal; he had no abnormal movements; and he ambulated upright and unimpaired.[9] (R. at 1019-20.)

---

[8] During his follow-up visits at Family Preservation, Shular reported his medications improved his symptoms of anxiety and depression, as well as his pain. (R. at 1022, 1025, 1028.)

[9] Davis's examination findings remained unchanged on July 1 and September 4, 2019, except Shular's mood was calm, euphoric and hopeful. (R. at 1023, 1029.) On August 5, 2019, Davis's examination findings remained unchanged, except Shular had partial insight. (R. at 1026.)

On June 26, 2019, Leigh A. Ford, Ph.D., a licensed clinical psychologist, evaluated Shular at the request of Disability Determination Services. (R. at 948-52.) Shular reported he experienced physical abuse by his father. (R. at 948.) He stated he could perform his personal grooming tasks independently; light household chores, including washing dishes and house cleaning; and manage his own medications. (R. at 949.) He stated he watched television, "sleeps a lot" and had no desire to be around people. (R. at 949.) Shular's grooming and hygiene were appropriate; he was fully oriented; his motor activity was somewhat restless; he required a cane for ambulation; he maintained eye contact; he was cooperative; his affect was variable, and mood was pessimistic; his speech was normal; his thought content was appropriate and consistent with mood; his organization of thought was logical and goal directed; his judgment was adequate; his reality testing was good; and his coping skills appeared to be "somewhat overwhelmed." (R. at 949-50.) Shular scored 28/30 on the Montreal Cognitive Assessment, ("MoCA").[10] (R. at 950.) Ford diagnosed major depressive disorder, recurrent, moderate to severe, and unspecified anxiety disorder. (R. at 951.)

Ford opined Shular could perform simple, repetitive tasks; he had moderate limitations in his ability to tolerate stress and pressure of day-to-day employment and to respond appropriately to supervision, co-workers, stress and pressures in a work setting; and he had slight limitations in his ability to sustain attention and concentration towards simple, repetitive tasks. (R. at 951.)

---

[10] The MoCA test is a series of questions designed to detect problems with cognition. The individual is considered to have normal cognitive abilities with a score of 26 to 30 points. *See* https://www.healthgrades.com/right-care/dementia/the-moca-montreal-cognitive-assessment-test-for-dementia (last visited Feb. 28, 2022).

On July 15, 2019, Leslie E. Montgomery, Ph.D., a state agency psychologist, completed a PRTF, finding Shular had no limitations in his ability to understand, remember or apply information and to adapt or manage himself; mild limitations in his ability to concentrate, persist or maintain pace; and moderate limitations in his ability to interact with others. (R. at 126-27.)

That same day, Montgomery also completed a mental assessment, indicating Shular had moderate limitations in his ability to maintain attention and concentration for extended periods; to work in coordination with or in proximity to others without being distracted by them; to interact appropriately with the general public; to accept instructions and respond appropriately to criticism from supervisors; and to get along with co-workers or peers without distracting them. (R. at 130-32.) Montgomery stated Shular's work-related mental abilities were, otherwise, not significantly limited. (R. at 131-32.) She opined Shular could perform simple, repetitive tasks. (R. at 132.)

On July 29, 2019, Shular saw Brooks and reported shortness of breath with activity. (R at 1048.) He reported his medication helped his pain and improved his quality of life. (R. at 1048.) Shular's breathing was effortless; he had normal auscultation of the lungs; his breath sounds were clear, bilaterally, and normal in volume; he had a normal gait; he had appropriate judgment and good insight; and he had a euthymic mood and appropriate affect.[11] (R. at 1051.)

---

[11] Shular's examination findings remained unchanged at his subsequent office visits. (R. at 1060, 1067, 1076, 1083, 1091, 1097, 1123, 1150.)

On August 9, 2019, Davis completed a mental assessment, finding Shular had slight limitations in his ability to function independently; to understand, remember and carry out detailed and simple job instructions; and to maintain personal appearance. (R. at 1010-12.) She found Shular had a satisfactory ability to follow work rules; to relate to co-workers; to interact with supervisors; to maintain attention and concentration; to understand, remember and carry out complex job instructions; and to demonstrate reliability. (R. at 1010-11.) Davis opined Shular was seriously limited in his ability to deal with the public; to use judgment in public; to deal with work stresses; to behave in an emotionally stable manner; and to relate predictably in social situations. (R. at 1010-11.) She also stated Shular would be absent from work more than two days a month. (R. at 1012.)

On August 13, 2019, pulmonary function tests showed Shular's lung age was that of a 77-year-old; his forced vital capacity, ("FVC"), was at 87 percent of the predicted FVC; his forced expiration volume one second, ("$FEV_1$"), was at 77 percent of the predicted $FEV_1$; and his $FEV_1$/FVC was at 89 percent, indicative of mild restriction. (R. at 1057, 1128-30.) On August 28, 2019, Shular saw Brooks and reported Symbicort helped with his shortness of breath.[12]  (R. at 1057.) On September 25, 2019, Shular reported his breathing was stable, and he denied shortness of breath and chest pain. (R. at 1064.)

On January 10, 2020, Shular saw Dr. Benjamin Wiseman, M.D., a physician with Family Preservation, and reported medication provided a "little improvement" with his symptoms of anxiety and depression, and pain medication was "helping

---

[12]  At subsequent office visits, Shular continued to state his medication helped, he reported his breathing was stable, and he denied shortness of breath and chest pain. (R. at 1064, 1073, 1080, 1088, 1094, 1120, 1141, 1147.)

some." (R. at 1013-15.) Shular was friendly and cooperative; he was neat and well-groomed; he made good eye contact; his speech was normal; his thought processes were conversational, relevant and normal; he had full insight and good judgment; he had adequate attention and concentration; he was fully oriented; he had no memory impairment; his mood was calm and hopeful; his affect was appropriate; his gait, posture and psychomotor activity were normal; he had no abnormal movements; and he ambulated upright and unimpaired. (R. at 1013-14.)

On March 25, 2020, Shular was seen at Wellmont Medical Associates for complaints of congestion and coughing. (R at 1131-35.) X-rays of Shular's chest showed hazy bilateral pulmonary infiltrates compatible with viral pneumonitis. (R. at 1135, 1137.) He was diagnosed with the flu and an upper respiratory infection. (R. at 1135.)

On June 1, 2020, Brooks completed a medical assessment, finding Shular could occasionally lift and carry items weighing 20 pounds and 10 pounds frequently; he could stand and/or walk up to four hours in an eight-hour workday and could do so for 30 minutes without interruption; he could sit four hours in an eight-hour workday and could do so for 30 minutes without interruption; he could occasionally climb, balance and crouch, but never stoop, kneel or crawl; he had a limited ability to reach, to handle, to push/pull, to see and to hear; he was restricted from working around temperature extremes, chemicals, dust, fumes and humidity; and he would be absent from work more than two days a month. (R. at 1138-40.)

## III.  Analysis

The Commissioner uses a five-step process in evaluating DIB and SSI claims. *See* 20 C.F.R. §§ 404.1520, 416.920 (2020). *See also Heckler v. Campbell*, 461 U.S. 458, 460-62 (1983); *Hall v. Harris*, 658 F.2d 260, 264-65 (4th Cir. 1981). This process requires the Commissioner to consider, in order, whether a claimant 1) is working; 2) has a severe impairment; 3) has an impairment that meets or equals the requirements of a listed impairment; 4) can return to his past relevant work; and 5) if not, whether he can perform other work. *See* 20 C.F.R. §§ 404.1520, 416.920. If the Commissioner finds conclusively that a claimant is or is not disabled at any point in this process, review does not proceed to the next step. *See* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4) (2020).

Under this analysis, a claimant has the initial burden of showing that he is unable to return to his past relevant work because of his impairments. Once the claimant establishes a prima facie case of disability, the burden shifts to the Commissioner. To satisfy this burden, the Commissioner must then establish that the claimant has the residual functional capacity, considering the claimant's age, education, work experience and impairments, to perform alternative jobs that exist in the national economy. *See* 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(A)-(B); *McLain v. Schweiker*, 715 F.2d 866, 868-69 (4th Cir. 1983); *Hall*, 658 F.2d at 264-65; *Wilson v. Califano*, 617 F.2d 1050, 1053 (4th Cir. 1980).

Shular argues the ALJ erred by improperly determining his physical residual functional capacity by rejecting the opinions of Dr. Brown, Watts, Davis and Brooks, and by giving controlling weight to the opinions of the state agency consultants. (Plaintiff's Memorandum In Support Of His Motion For Summary

Judgment, ("Plaintiff's Brief"), at 5-7.) Shular contends the state agency consultants' assessments were "stale [and] outdated." (Plaintiff's Brief at 6.)

Because this matter involves a claim filed after March 27, 2017, a new regulatory framework applies to the ALJ's evaluation of medical opinions in the record. For applications filed on or after March 27, 2017, the Social Security Administration, ("SSA"), has enacted substantial revisions to the regulations governing the evaluation of opinion evidence. *See* Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5844-01, 2017 WL 168819 (Jan. 18, 2017) (technical errors corrected by 82 Fed. Reg. 15132-01, 2017 WL 1105368 (Mar. 27, 2017)). Under the new regulations, ALJs no longer are required to assign an evidentiary weight to medical opinions or to accord special deference to treating source opinions. *See* 20 C.F.R. §§ 404.1520c(a), 416.920c(a) (2020) (providing that ALJs "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [a claimant's] medical sources").[13]

Instead, an ALJ must consider and articulate how *persuasive* he finds all the medical opinions and all prior administrative medical findings in a claimant's case record based on the following factors: (1) supportability; (2) consistency; (3)

---

[13] The new regulations define a "medical opinion" as "a statement from a medical source about what you can still do despite your impairment(s) and whether you have one or more impairment-related limitations or restrictions" in the abilities to perform the physical, mental or other demands of work activity or to adapt to environmental conditions. 20 C.F.R. §§ 404.1513(a)(2), 416.913(a)(2) (2020). Those regulations also define a "prior administrative medical finding" as a "finding, other than the ultimate determination about whether [a claimant is] disabled, about a medical issue made by [the SSA's] Federal and State agency medical and psychological consultants at a prior level of review." 20 C.F.R. §§ 404.1513(a)(5), 416.913(a)(5) (2020).

relationship with the claimant; (4) specialization; and (5) other factors that tend to support or contradict the opinion. *See* 20 C.F.R. §§ 404.1520c(b), (c)(1)-(5), 416.920c(b), (c)(1)-(5) (2020) (emphasis added). Moreover, when a medical source provides more than one opinion or finding, the ALJ will evaluate the persuasiveness of such opinions or findings "together in a single analysis" and need not articulate how he or she considered those opinions or findings "individually." 20 C.F.R. §§ 404.1520c(b)(1), 416.920c(b)(1) (2020).

In evaluating the persuasiveness of an opinion or finding, the SSA deems supportability and consistency "the most important factors," and, thus, the ALJ must address those two factors in evaluating the persuasiveness of medical opinions or prior administrative medical findings. 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2) (2020).[14] In evaluating the supportability of a medical opinion, "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) … the more persuasive the medical opinions … will be." 20 C.F.R. §§ 404.1520c(c)(1), 416.920c(c)(1). In assessing the consistency factor, "[t]he more consistent a medical opinion(s) … is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) … will be." 20 C.F.R. §§ 404.1520c(c)(2), 416.920c(c)(2).

The new regulations also alter the way the ALJ discusses the medical opinions or findings in the text of the decision. *See* 20 C.F.R. §§ 404.1520c(b)(2),

---

[14] "Supportability" means "[t]he extent to which a medical source's opinion is supported by relevant objective medical evidence and the source's supporting explanation." Revisions to Rules, 82 Fed. Reg. at 5853; *see also* 20 C.F.R. §§ 404.1520c(c)(1), 416.920c(c)(1). "Consistency" denotes "the extent to which the opinion is consistent with the evidence from other medical sources and nonmedical sources in the claim." Revisions to Rules, 82 Fed. Reg. at 5853; *see also* 20 C.F.R. §§ 404.1520c(c)(2), 416.920c(c)(2).

416.920c(b)(2). After considering the relevant factors, the ALJ is not required to explain how he considered each of them. Instead, when articulating his finding about whether an opinion is persuasive, the ALJ need only explain how he considered "the most important factors" of supportability and consistency. *See* 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2). The ALJ may comment on the other factors, including the source's relationship with the claimant, but generally has no obligation to do so. *See* 20 C.F.R. §§ 404.1520c(b)(2)-(3), 416.920c(b)(2)-(3) (2020).

When the ALJ finds two or more opinions or findings about the same issue are both equally well-supported and consistent with the record, but are not exactly the same, the ALJ must consider the most persuasive factors, including the nature and extent of the medical source's relationship with the claimant and area of specialization, as well as the catch-all "other factors that tend to support or contradict a medical opinion or prior administrative medical finding." 20 C.F.R. §§ 404.1520c(b)(3), (c)(3)-(5), 416.920c(b)(3), (c)(3)-(5).

A claimant's residual functional capacity refers to the most the claimant can still do despite his limitations. *See* 20 C.F.R. §§ 404.1545(a), 416.945(a) (2020). The ALJ found Shular had the residual functional capacity to perform light work, except he would require two hours of sitting throughout the day; he could occasionally climb, balance, stoop, kneel, crouch and crawl; he could have only occasional exposure to pulmonary irritants and no more than moderate exposure to noise; he was limited to tasks that could be learned in 30 days or less; and he could have no more than occasional interaction with the public. (R. at 17-18.)

In making his residual functional capacity finding, the ALJ stated he found Brooks's June 1, 2020, opinion "somewhat persuasive." (R. at 21-22, 1138-40.) The ALJ found the medical evidence supported Brooks's finding that Shular could occasionally lift and carry items weighing 20 pounds and 10 pounds frequently and occasionally climb, balance and crouch. (R. at 22, 1138-39.) However, the ALJ noted there was no evidence to support Brooks's opinion that Shular had limitations in his ability to reach, to handle, to see or to hear. (R. at 22, 1139.) The record shows in January 2019, Shular's grip strength was 5/5 with adequate fine motor movements, dexterity and ability to grip objects, bilaterally, and he had good bilateral motor tone and strength in all muscle groups. (R. at 746.) In February 2019, Shular underwent excision of a dorsal ganglion cyst. (R. at 823-24.) Subsequent examinations show Shular was doing well, he denied pain and discomfort in his wrist and hand, he had intact sensation, and his motor function was grossly intact. (R. at 843, 853, 856.) Shular suffers from mild hearing loss in his left ear and moderate hearing loss in his right ear; thus, the ALJ found Shular could have no more than moderate exposure to noise. (R. at 17-18.)

The ALJ also limited Shular to only occasional exposure to pulmonary irritants, but he found Shular's generally unremarkable respiratory examinations did not support limitations in exposure to temperature extremes, fumes or humidity. (R. at 22.) Pulmonary function tests showed Shular had a mildly restricted airway, and he had the lung age of a 77-year-old, but his examination findings showed his breathing was effortless; he had normal auscultation of the lungs; and his breath sounds were clear, bilaterally, and normal in volume. (R. at 1051, 1060, 1067, 1076, 1083, 1091, 1097, 1123, 1129, 1150.) Shular reported his breathing problems were stable, as his medication helped with his shortness of breath. (R. at 1057, 1064, 1073, 1080, 1088, 1094, 1120, 1141, 1147.) "If a

symptom can be reasonably controlled by medication or treatment, it is not disabling." *See Gross v. Heckler,* 785 F.2d 1163, 1166 (4th Cir. 1986).

The ALJ found Dr. Brown's January 19, 2019, opinion "unpersuasive" and "inconsistent." (R. at 22.) Dr. Brown opined Shuler would "unlikely" be able to walk and/or stand for a full workday; he "may be" able to sit for a partial workday with allotted occasional breaks; he would be limited to lifting and carrying items weighing less than 10 pounds because his condition "may be" exacerbated by lifting or carrying excessive weight; and he should refrain from excessive bending, stooping and crouching. (R. at 746-47.) The ALJ noted Dr. Brown's opinion was inconsistent with his examination findings, which showed Shular ambulated without assistance; his extremities had no edema, cyanosis or erythema; he was able to sit in no significant distress and walk and stand in the office; he had good motor tone and strength, bilaterally, in all muscle groups; his reflexes were normal; he had intact sensation; he had no muscle asymmetry, atrophy or involuntary movements; his straight leg raising tests were negative; and he had joint tenderness in the lumbar spine, but no signs of joint instability, inflammation or deformity. (R. at 22, 745-46.) X-rays of Shular's lumbar spine showed stable, mild, multi-level degenerative changes. (R. at 1007.)

The record also shows Shular's physical examinations generally were unremarkable, showing he had a normal gait, posture and psychomotor activity; he ambulated upright and unimpaired; and his lumbar spine had normal lordosis, no tenderness to palpation and normal range of motion. (R. at 754, 763, 771, 778, 787, 794, 809, 837, 846, 1020, 1051.) In fact, Shular reported being active, including playing with his dog, hunting, working outdoors and walking for exercise. (R. at 759, 768, 775, 784, 791, 798, 806, 1040, 1064.) Furthermore,

Shular reported medication controlled his pain and improved his quality of life. (R. at 1048, 1080, 1088, 1094, 1141, 1147.) *See Gross*, 785 F.2d at 1166.

The ALJ found Dr. Hutcheson's January 22, 2019, and Dr. Koch's July 15, 2019, opinions "persuasive" and "consistent" with the medical evidence. (R. at 21, 93-94, 129-30.) Drs. Hutcheson and Koch opined Shular had the residual functional capacity to perform light work, except he could stand, walk and sit six hours each in an eight-hour workday, frequently balance and occasionally climb, stoop, kneel, crouch and crawl. (R. at 93-94, 129-30.) The ALJ further limited Shular to only occasional balancing and two hours of sitting based on his body mass index and complaints of lower back pain. (R. at 21.) As noted by the ALJ, even though Shular's pulmonary examinations generally were unremarkable, he limited Shular's exposure to pulmonary irritants due to his COPD. (R. at 21.) Based on the above, I find that substantial evidence exists to support the ALJ's consideration of the opinion evidence concerning Shular's physical residual functional capacity finding.

The ALJ found the opinions of Leizer, Davis and Watts "unpersuasive" and "inconsistent" with the medical record. (R. at 22-24.) Leizer opined Shular did not suffer from a severe mental impairment. (R. at 90-91.) The ALJ noted the medical evidence, as well as Shular's subjective complaints, supported at least mild limitations in four functional areas and moderate limitations in his ability to interact with others. (R. at 22-23.) The ALJ found the medical record did not support Davis's findings that Shular had marked limitations in his ability to deal with work stresses; to behave in an emotionally stable manner; and to relate predictably in social situations. (R. at 23, 1010-11.) Likewise, the ALJ found the medical record did not support Watts's findings that Shular had marked limitations

in his ability to relate to co-workers; to deal with the public; to use judgment in public; to interact with supervisors; and to understand, remember and carry out complex and detailed job instructions. (R. at 23-24, 874-75.)

The ALJ found Montgomery's opinion "persuasive" and "consistent" with the medical evidence of record. (R. at 23, 126-27.) Montgomery found that Shular had moderate limitations in his ability to interact with others and mild limitations in his ability to concentrate, persist and maintain pace. (R. at 126.) Montgomery also opined that Shular would be capable of appropriate social interaction with co-workers and supervisors and limited general public contact. (R. at 132.) She also opined Shular could perform simple and repetitive tasks. (R. at 132.) The ALJ noted this opinion was supported by the medical evidence and Shular's subjective reporting concerning his symptoms of anxiety and depression. (R. at 23.)

The ALJ found Ford's June 26, 2019, opinion "somewhat persuasive" and "somewhat consistent" with the medical record. (R. at 24.) The ALJ found that mental status examination findings, as well as Shular's own reporting, supported mild limitations in understanding, remembering or applying information and in maintaining concentration and attention and moderate limitations in interacting with others. (R. at 24.) The ALJ noted the evidence did not support moderate limitations in handling or tolerating stress and pressure of a work setting, as Shular had been noted to have generally normal insight and judgment and no significant limitations in getting along with authority figures. (R. at 24.)   The record shows Shular was friendly and cooperative; he made good eye contact; he had normal speech; his thought processes were logical; he had appropriate judgment and good insight; he had adequate attention and concentration; and he had no memory impairment. (R. at 836-37, 846, 949-50, 1013-14, 1019-20, 1022-23, 1028-29.)

Shular scored 28/30 on the MoCA, which indicated he had normal cognition. (R. at 950.) In addition, Shular reported his mood and sleep had improved with medication. (R. at 750, 775, 784, 791, 798, 1031, 1040, 1048, 1073, 1080, 1088, 1094, 1141, 1147.) *See Gross*, 785 F.2d at 1166. Based on this, I find substantial evidence exists to support the ALJ's consideration of the medical evidence and his mental residual functional capacity finding.

## PROPOSED FINDINGS OF FACT

As supplemented by the above summary and analysis, the undersigned now submits the following formal findings, conclusions and recommendations:

1.  Substantial evidence exists in the record to support the ALJ's consideration of the medical evidence;

2.  Substantial evidence exists in the record to support the ALJ's residual functional capacity finding; and

3.  Substantial evidence exists in the record to support the Commissioner's finding that Shular was not disabled under the Act and was not entitled to DIB and SSI benefits.

## RECOMMENDED DISPOSITION

The undersigned recommends that the court deny Shular's motion for summary judgment, grant the Commissioner's motion for summary judgment and affirm the Commissioners decision denying benefits.

## Notice to Parties

Notice is hereby given to the parties of the provisions of 28 U.S.C. § 636(b)(1)(C):

> Within fourteen days after being served with a copy [of this Report and Recommendation], any party may serve and file written objections to such proposed findings and recommendations as provided by rules of court. A judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made. A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge may also receive further evidence or recommit the matter to the magistrate judge with instructions.

Failure to file timely written objections to these proposed findings and recommendations within 14 days could waive appellate review. At the conclusion of the 14-day period, the Clerk is directed to transmit the record in this matter to the Honorable James P. Jones, Senior United States District Judge.

The Clerk is directed to send certified copies of this Report and Recommendation to all counsel of record at this time.

DATED:    February 28, 2022.

/s/ *Pamela Meade Sargent*
UNITED STATES MAGISTRATE JUDGE